ROE, casual ejector, and GREEN, adm'r, *vs.* KERSEY *et al.*

1. In an action of ejectment, a bond for titles from A to B, for the tract of land in dispute, both being strangers to the action, cannot avail C, the defendant, as color of title, there being no assignment of the bond to him.
2. An imperfect equity, resting in parol, cannot serve a defendant in ejectment, as color of title.

Ejectment, in Lee Superior Court. Tried before Judge ALLEN, at the September Term, 1860.

This was an action brought by John Doe, on a demise, from the orphans of Obediah Osteen; one from James Mims and his wife, and Turner Hall and his wife; and one from Alfred Kersey, and Griffin Smith, against Richard Roe, casual ejector, and Jesse C. Hill and Charles Coney, tenants in possession, to recover lot of land, number eighty-five, in the first district of Lee county.

The defendants pleaded the general issue, and the statute of limitations.

Pending the action, both the tenants died, and, by consent, Benjamin Green, as administrator of John Whitsett, deceased, was made a party in their stead, and James Coney, as administrator of the said Charles Coney, deceased, was made co-defendant.

On the trial of the case, in the Court below, the plaintiff read in evidence, a grant from the State of Georgia to Obediah Osteen's orphans, and proved that Sarah and Mary Osteen were the orphans mentioned in the grant, and that Mary Osteen married James Mims, in the year 1831, and that Sarah Osteen married James Hall in the year 1834; that the tenants, sued as such, were in possession of the land in dispute at the time the action was commenced, and that the land lies in Lee county; that there are seventy acres of land cleared on the lot, and that, for four or five years immediately preceding the trial, the land was worth, for rent, four or five dollars per acre by the year.

Plaintiff also read in evidence a deed from James Mims,

conveying the land in dispute to Alfred Kersey; and also a deed from James Hall to Alfred Kersey for the land in dispute.

Here the plaintiff closed.

The defendant proved that Jesse C. Hill and Charles Coney settled on the land as far back as 1843, and cleared some land on the lot, and had exercised acts of ownership continuously, from that time to the commencement of the action; that said Hill and Coney held under, and as the tenants of, John Whitsett; that the first clearing was done on the lot in 1844; that the defendants had an original bond for titles, dated the 15th of January, 1840, purporting to have been executed by Thomas S. Gill, conditioned to make Samuel Nixon a good and sufficient warrantee title to said land, upon the payment, by Nixon, of five hundred and fifty dollars; that said bond was attested by James McCleland and John J. E. Gregory, both of whom, by reputation, were dead; that said bond was given to Frederick H. West, Esq., as counsel for defendants in this action, and was destroyed by fire at the time the Court House in Lee county was burned, the office of said West being, at the time, in the Court house; that Nixon bought the land for John Whitsett from the said Gill, and delivered the bond to Rebecca Whitsett, the sister of said John Whitsett, by his direction; that at the time the bond was given, it was agreed, between Gill and Nixon, that Gill should come to Nixon's house in December or January, after the trade, and get the purchase money, and make the title to John Whitsett, but that Gill died before the time, and did not come; that when Nixon left the bond at Whitsett's house with his sister, he received from her, by Whitsett's direction, five dollars, which was all the consideration ever received by Nixon; that Alfred Kersey went to Nixon, and by representations, induced him to believe that neither Whitsett's administrator nor heirs were setting up any title to the land, and that one Coney was in possession, and urged Nixon to sell the land to him, promising not to hold him responsible for any failure of the title. Under these circumstances, and not knowing that Coney was Whitsett's tenant on the

Roe, casual ejector, and Green, adm'r, *vs.* Kersey *et al.*

land, Nixon made Kersey a deed, and received ten dollars, and an eighty acre and forty acre land warrant therefor; that Nixon never made any written assignment of said bond to Whitsett; that Nixon gave his notes to Gill for the land, and paid some, and some remained unpaid; that Whitsett was to pay the purchase money when he got a title.

Defendant then offered, in evidence, a copy of the bond for titles, in accordance with the contents proven, the execution of the bond being admitted.

Upon objection made, the Court repelled the bond as evidence, on the ground that it furnished no color of title to Whitsett or his tenants, and counsel for defendant excepted.

The plaintiff introduced some proof that created a conflict in the testimony as to the time that Coney's occupancy of the land commenced, and it also appeared in evidence on the trial, that John Whitsett called on Willis A. Hawkins, Esq., in 1849 or 1850, and proposed to give him three hundred dollars to buy up the title of Osteen's orphans to the land. This action was commenced 17th May, 1854.

The testimony being closed, the presiding Judge charged the jury: "That even though they should believe that the defendants had been in possession of the land in dispute for seven years, holding adversely to the plaintiff, yet such possession, unless under color of title, did not constitute a good title under the statute of limitations; and that the bond for titles, from Gill to Nixon, was not a color of title for the defendants."

The jury returned a verdict in favor of the plaintiffs for the premises in dispute, and $700 00, for mesne profits, with cost of suit.

The plaintiffs in error seek a reversal of the judgment, on the ground that the Court erred in repelling the copy-bond, and in charging the jury as before stated.

SLAUGHTER & ELY and VASON & DAVIS for plaintiffs in error.

WILLS & HAWKINS for defendants in error.

Roe, casual ejector, and Green, adm'r, *vs.* Kersey *et al.*

*By the Court.*—JENKINS, J., delivering the opinion.

There are two exceptions to the judgment of the Court below, and the case presents the anomaly of error assigned, first, in the rejection of a document offered in evidence, and secondly, in the charge given to the jury, as to the effects of that very document upon the rights of the parties. Nevertheless, we have the certificate of the presiding Judge, that the bill of exceptions is true, and must take the case as we find it.

The defendant below sought to defend himself by possession, under color of title. As color of title, he offered, in evidence, a bond for titles to the land in dispute, from one Gill to one Nixon, conditioned to make titles to Nixon, upon the payment of the purchase-money. There was evidence on the trial that Nixon had, by arrangement between himself and Whitsett, (the defendant's intestate), bargained for the land, with Gill, for Whitsett, but had given his own notes for it, and taken a bond for titles to himself; that he had paid a part of the consideration money, and that his notes were still out for the remainder; that Whitsett had paid him $5 00 only, and that he had never assigned the bond to Whitsett; that Nixon had never been in possession of the land, and that the parties in actual possession were the tenants of Whitsett.

This bond, or a copy of it, was the document offered and rejected by the Court, as color of title in Whitsett's administrator. The Court rejected it, because " it furnished no color of title to Whitsett, or his tenants;" and so, also, he charged the jury.

We consider (as covering both exceptions) the question, whether this bond for titles was available to Whitsett's representative as color of title in law?

Color of title cannot rest in parol. There must be a document of some sort produced, to make color of title. That document must, upon inspection, evidence some right, or color of right in the party seeking to use it. A cannot

show color of title in himself, by introducing a deed from B to C.

A bond for titles may be a color of title, but it can only give color to the obligee, or to his assignee. Here Nixon was the obligee, and he never assigned the bond. Whitsett never acquired title in the bond; how, then, can the bond be color of title to him? But, it is said he had an equity in the bond, growing out of the facts, that Nixon bargained for him, and that he had paid Nixon $5 00.

The reply is, that an equity, to be available in such case, must be a perfect equity. Whitsett evidently had no perfect equity, in this matter, against Nixon. This, he could only acquire by the payment, to Nixon, of the purchase-money, which he had not done. As to any equity against Gill, the obligor, that is still more imperfect. It does not appear that Gill knew him in the contract at all. To the assertion of a right under the bond, against Gill, two things are necessary, first, the payment of the entire purchase-money to Gill; secondly, the assignment of the bond by Nixon. To allow an imperfect equity, under a bond for titles, resting in parol, to establish a color of title, as against a party showing paramount paper title, would be stretching the doctrine quite too far.

Judgment affirmed.